Opinion Issued November 6, 2003
  
 
 
 
 

 
 
 
 
 

 



     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00692-CR




SADIE PROFFITT, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 41045




MEMORANDUM OPINION

          Appellant Sadie Proffitt was charged with two counts of murder. The jury
found her guilty as alleged in the indictment, and assessed punishment at sixty years’
confinement. We affirm.
          In five points of error, appellant claims the following: (1) the evidence is
legally insufficient to prove the offense alleged in the indictment; (2) the trial court
erred in failing to submit a lesser included charge to the jury; (3) the trial court erred
in admitting the results of a test conducted by the State’s expert, and admitting the
expert’s opinion testimony; (4) the trial court erred in admitting slides of the deceased
victim; and (5) the trial court erred in allowing the State to play a 911 tape of the
victim’s voice.
Facts
          Appellant resided at the Woodhollow Apartments in Lake Jackson together
with her husband, David Proffitt, who was confined to his recliner. On the morning
of October 10, 2000, their apartment became engulfed in flames. In the aftermath of
the fire, the body of appellant’s husband was located in their apartment. Four other
bodies, including the bodies of Omar and Felicitia Attar, were located in the
apartment directly above appellant’s apartment. 
          The State Fire Marshall and various law enforcement entities determined that
the fire originated in the appellant’s apartment, and that appellant intentionally set the
fire in order to collect on the accidental death provision of Mr. Proffitt’s life
insurance policy, which would have paid $30,000 upon his accidental death, but only
$525.00 upon his natural death.
The Offenses Alleged in the Indictment
          In her first point of error, appellant contends that there is no evidence that she
knowingly caused the death of either victim, and that the trial court erred when it
refused to grant her motion for directed verdict as to the first paragraph on each of the
two counts of the indictment.
          The first paragraph of each count alleged murder by knowingly causing the
death of Omar Attar and murder by knowingly causing the death of Felicitia Attar. 
In the second paragraph of each count, the indictment alleged murder by attempting
to commit felony theft, and in the course of and in furtherance of attempting to
commit felony theft, knowingly committing an act clearly dangerous to human life
that caused the death of Omar Attar, and murder by attempting to commit felony theft,
and in the course of and in furtherance of attempting to commit felony theft,
knowingly committing an act clearly dangerous to human life that caused the death
of Felicitia Attar. See Tex. Pen. Code Ann. § 19.02(b) (Vernon 2003).
          When a general verdict is returned and the evidence is sufficient to support a
finding of guilt under any of the allegation paragraphs submitted, the verdict will be
upheld. McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).
          Appellant does not complain that the evidence supporting her conviction is
legally insufficient with respect to the second paragraph of the indictment. Because
a general verdict may be upheld if the evidence is sufficient to support a finding of
guilt under either paragraph, any error in refusing to grant a directed verdict as to the
first paragraph of the indictment is harmless. Tex. R. App. P. 33.1.
          We overrule appellant’s first point of error. 
Lesser Included Charge
          In her second point of error, appellant contends that the trial court erred in
refusing to submit lesser included charges of manslaughter and criminally negligent
homicide to the jury. To be entitled to a charge on a lesser included offense, the
lesser included offense must be included within the proof necessary to establish the
offense charged, and some evidence must exist in the record that would permit a jury
to rationally find that the defendant is guilty only of the lesser offense. Mathis v.
State, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002).
          Involuntary manslaughter is a lesser included offense to the offense of murder. 
Smith v. State, 644 S.W.2d 500, 502 (Tex. App.—Corpus Christi 1982, pet. ref’d). 
Criminally negligent homicide is a possible lesser included offense of murder, and
is also a possible underlying offense of felony-murder if the underlying felony is not
an underlying assaultive offense. See Thomas v. State, 699 S.W.2d 845, 849 (Tex.
Crim. App. 1985) (underlying offense of murder); Kuykendall v. State, 609 S.W.2d
791, 796 (Tex. Crim. App. 1980), overruled on other grounds, 858 S.W.2d 467, 469-70 (Tex. Crim. App. 1993) (possible underlying offense of felony-murder). Likewise,
because manslaughter and criminally negligent homicide differ only in the required
mens rea, manslaughter is a possible lesser-included offense of felony murder. See
Jones v. State, 100 S.W.3d 1, 6 (Tex. App.—Tyler 2002, pet. ref’d) (citing Kukendall,
609 S.W.2d at 797-98, overruled on other grounds, 858 S.W.2d at 469-70).
Manslaughter
          Manslaughter requires proof that appellant acted recklessly; that she
consciously disregarded a substantial risk of which she was aware. See Tex. Pen.
Code Ann. § 19.04(a) (Vernon 2003); Tex. Pen. Code Ann. § 6.03(c) (Vernon
2003). To be entitled to an instruction on manslaughter, appellant must, therefore,
demonstrate that some evidence is present in the record that would permit the jury to
rationally find that, in setting the fire, she consciously disregarded a substantial risk
of death, of which she was aware. She argues that the following evidence suggests
she was aware that “her actions in setting the fire might place others at risk of death
for which they would need to be warned by a smoke detector and rescued [b]y
emergency personnel[:]” (1) there was no battery in her smoke detector, nor was a
battery recovered from her apartment; (2) appellant delayed calling 911 to report the
fire; and (3) appellant was aware that other people were home at the time the fire
started. We disagree that this evidence demonstrates that appellant was guilty only
of manslaughter.
Criminally Negligent Homicide 
          Criminally negligent homicide requires proof that the defendant acted with
criminal negligence: that she should have been aware of a substantial and
unjustifiable risk that death would occur. See Tex. Pen. Code Ann. § 19.05(a)
(Vernon 2003); Tex. Pen. Code Ann.§ 6.03(d) (Vernon 2003). Appellant contends
that “setting a chair on fire in an apartment creates a substantial and unjustifiable risk
of death” and that the following evidence supports her contention that she was
unaware of that risk, and therefore entitled to an instruction on the lesser included
offense of criminally negligent homicide: (1) the flashover stage of the fire would
occur within six or seven minutes of it being set, and appellant was unaware of this
risk; (2) she left her insurance papers in the apartment, evidencing that she did not
think the fire would grow to consume the entire apartment; (3) she left her eyeglasses
in the apartment; (4) she ran into the cold night wearing only her nightgown; (5) she
left her purse, its contents, and her identification in the apartment; (6) she ran past
two pair of shoes as she exited the apartment; (7) she left several valuable guns in her
apartment; (8) she stated that she and her son both tested the smoke detector in her
apartment, and that it was working; (9) appellant attempted to extinguish the fire; (10)
her hair was singed by the fire; (11) she inquired into whether the children residing
in the apartment above her unit had escaped; and (12) her medical records described
her as distraught, that her hair was burned, and that she had soot on her body. We
disagree that this evidence supports appellant’s contention that she was unaware of
the substantial and unjustifiable risk of death caused by her setting her apartment on
fire.
          Appellant was accused and convicted of knowingly causing the deaths of Omar
and Felicitia Attar, and/or knowingly starting a fire in her apartment, an act which is
clearly dangerous to human life. The evidence she presents does not amount to
evidence upon which a jury could rationally find that she only acted recklessly or
with criminal negligence with respect to setting the fire and that she did not
knowingly set the fire. See Mathis, 67 S.W.3d at 926.
          We overrule appellant’s second point of error.
Test Results and Expert Testimony
          In her third point of error, appellant contends that the trial court erred in
admitting into evidence the results from an experiment conducted by Dr. DeHaan, the
State’s expert witness, and in admitting his opinion testimony regarding the cause of
the fire. She contends that the test conducted by the State’s expert fails to satisfy the
reliability requirements of Hartman v. State, 946 S.W.2d 60 (Tex. Crim. App. 1997).
Standard of Review
          The decision as to whether an expert witness is qualified to testify is a matter
committed to the trial court’s discretion. Harris County Hosp. Dist. v. Estrada, 872
S.W.2d 759, 762 (Tex. App.—Houston [1st Dist.] 1993, writ denied). The decision
to admit scientific testimony should not be overturned absent an abuse of discretion. 
Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). A trial court enjoys wide
latitude in determining whether expert testimony is admissible. Hernandez v. State,
53 S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The trial court
abuses its discretion when its decision is so clearly wrong as to fall outside the zone
of reasonable disagreement and when the trial court acts arbitrarily and unreasonably,
without reference to any guiding rules or principles. Galliford v. State, 101 S.W.3d
600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).
Analysis
          Scientific expert testimony is admissible if it is sufficiently reliable to assist the
jury in reaching accurate results. Hartman v. State, 946 S.W.2d 60, 62 (Tex. Crim.
App. 1997). In determining reliability, (1) the underlying scientific theory must be
valid, (2) the technique applying the theory must be valid, and (3) the technique must
have been properly applied on the occasion in question. Id. at 62. Appellant states
that she does not object to the underlying theory of fire investigation, but contends
that the technique Dr. HeHaan used in applying the theory was invalid because (1)
the experiment Dr. DeHaan conducted adhered only to portions of the guidelines of
the State of California Department of Consumer Affairs Bureau of Home Furnishings
and Thermal Insulation Technical Bulletin 116 (Technical Bulletin 116), (2) the
National Fire Prevention Association (NFPA) does not establish any procedures or
protocols for the test he conducted, and (3) there were dissimilarities between the test
conducted by DeHaan and the actual occurrence.
Validity of Technique
          Dr. DeHaan testified that the purpose of his experiment differed from the
purpose of a test conducted pursuant to Technical Bulletin 116 and therefore deviated
from its guidelines. He testified that, while the protocol described in Technical
Bulletin 116 is intended for testing furniture so that manufacturers may have a
uniform performance test for them to determine the ignitability of their products when
tested by the State of California, he was not testing the chair to determine its
ignitability for the purposes of California’s product safety standards; the test he
conducted is distinguishable from the test detailed in Technical Bulletin 116 because 
Technical Bulletin 116 tests the ignition performance of the upholstery by application
of the heat source or flame directly to the upholstery, whereas the heat source in
DeHaan’s experiment was applied to a cotton sheet; and the purpose of his
experiment was to determine if a single match would ignite the chair, considering that
the other investigators previously conducted extensive cigarette testing, and that the
two cigarettes he placed on the chair self-extinguished within twenty-five minutes. 
          Regarding whether Dr. DeHaan properly applied scientific methodology in
performing the experiment, he testified that he has served as a member of the
technical committee of the NFPA, which publishes a document entitled, NFPA 921
Guide for Fire and Explosion Investigations. He testified that this document serves
as a guide for fire investigators across the country; and its purpose is to guide
investigators through the information-gathering process needed for a scientific
analysis, and it provides a step-by-step process that is to be followed to reliably
establish the origin of and cause of a fire or explosion. Although the NFPA does not
describe a specific procedure or protocol for fire testing, the NFPA does set forth
methodology on how to apply the science of fire investigation. Dr. DeHaan testified
that he properly applied the scientific methodology set forth by the NFPA in this case,
and that the NFPA’s methodology is considered reliable in the scientific community
of investigators who investigate the cause and origin of a fire.
          Although defense counsel established that the experiment conducted by Dr.
DeHaan did not comply with the procedure enumerated by Technical Bulletin 116,
Dr. DeHaan testified that his investigation complied with NFPA methodology on how
to apply the science of fire investigation. Considering that DeHaan testified that the
NFPA has set forth methodology on how to apply the science of fire investigation,
and that the NFPA’s methodology is considered reliable in the scientific community
of investigators who investigate the cause and origin of a fire, the absence of a
specific published procedure or protocol to be employed for the specific type of fire
that occurred in the instant case does not affect the reliability, and therefore
admissibility of the evidence, but only affects its weight. Hernandez, 53 S.W.3d at
749-50. We agree with the trial court that Dr. DeHaan’s technique was valid.
 
Dissimilarities Between Occurrence and Experiment
          Appellant also contends that the trial court erred in admitting the experiments
because they were not conducted under conditions similar to those of the offense. 
Specifically, she argues the experiment should have been excluded because (1) the
test did not allow for three years of constant wear that the chair involved in the
occurrence was subject to, and (2) the test was complicated by the fact that the chair
involved in the occurrence may have had some materials in it which might provide
a bridge between a cigarette and a large fire. 
          To render admissible evidence of an experiment made out of court and without
the presence of the opposing party, there must be a substantial similarity between the
conditions existing at the time of the experiment and those surrounding the
occurrence giving rise to the litigation. Wells v. HCA Health Servs., Inc., 806 S.W.2d
850, 853 (Tex. App.—Fort Worth 1990, writ denied). However, the conditions do
not need to be identical; dissimilarities affect the weight and not the admissibility of
the evidence. Cantu v. State, 738 S.W.2d 249, 255 (Tex. Crim. App. 1987). When
there is a dissimilarity in the conditions, the admission of the experiment is within the
trial court's discretion if the differences are minor or are explained to the jury. Fort
Worth & Denver Ry. v. Williams, 375 S.W.2d 279, 282 (Tex.1964). Here, the record
reflects that the dissimilarities between the experiment and the occurrence, which
were minor, were explained to the jury, and it was therefore within the sound
discretion of the trial court to allow the evidence. Any dissimilarities affected the
weight of the evidence, and appellant was afforded the opportunity to cross-examine
Stewart on the dissimilarities complained about on appeal. We agree with the trial
court that Dr. DeHaan’s experiment and his opinion on the cause of the fire were
reliable. Therefore, we will not disturb its ruling. Morales v. State, 32 S.W.3d 862,
865 (Tex. Crim. App. 2000).
          We overrule appellant’s third point of error.
Slides of the Deceased Victim and the 911 Tape
          In her fourth and fifth points of error, appellant contends the trial court erred
by admitting slides of the deceased victims and an audio recording of a victim’s 911
call, because the probative value substantially outweighed the danger of unfair
prejudice. Appellant’s brief, however, fails to conform with Tex. R. App. P. 38.1(h),
because in that it does not provide any citation to authority in support of these
contentions. We therefore overrule appellant’s fourth and fifth points of error. Tex.
R. App. P. 38.1(h); Modden v. State, 721 S.W.2d 859, 863 (Tex. Crim. App. 1986).
Conclusion
The judgment of the trial court is affirmed.


                                                             Adele Hedges
                                                             Justice

Panel consists of Justices Hedges, Nuchia, and Higley.
Do not publish. Tex. R. App. P. 47.4.